**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| RICHARD WAYNE LAMONDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1145 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Richard Wayne Lamonds, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.)  Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 14; see also Docket Entry 13 (Plaintiff's Brief); Docket Entry 15 (Defendant's Memorandum); Docket Entry 16 (Plaintiff's Reply)).  For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of August 1, 2008. (Tr. 211-20.) Upon denial of those applications initially (Tr. 80-98, 121-28) and on reconsideration (Tr. 99-120, 134-51), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 152-53). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 41-69.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 25-36.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 17-24, 315-18), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2011.

2. [Plaintiff] has not engaged in substantial gainful activity since August 1, 2008, the alleged onset date.

3. [Plaintiff] has the following severe impairments: hypertension status post myocardial infarction, a history of seizures, and history of a heel injury.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . . [Plaintiff's] restrictions precluded lifting and carrying or pushing and pulling more than 50 pounds occasionally or 25 pounds frequently; standing and walking or sitting 6 hours in a work day; and no more than occasional stooping and climbing ramps and stairs. He was precluded from climbing ladders, ropes, or scaffolds and all exposure to moving machinery and unprotected heights.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from August 1, 2008, through the date of this decision.

(Tr. 30-35 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u>

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of the Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "the ALJ did not perform the function-by-function assessment required by [Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *6 (July 2, 1996) ("SSR 96-8p")] in making his determination as to [Plaintiff's] [RFC]" (Docket Entry 13 at 3 (bold font omitted));

(2) "[t]he ALJ relied on testimony of a [VE] that conflicts with the [Dictionary of Occupational Titles] without first obtaining an explanation and resolving the apparent conflict in his written decision, which failed to comply with the requirements set forth in [Social Security Ruling 00-4p, Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p")] (Docket Entry 13 at 9 (bold font omitted));

(3) "[a]fter finding and concluding that [Plaintiff's] restrictions and limitations included 'standing and walking or sitting 6 hours in a workday,' the ALJ failed to include these restrictions and limitations in his hypothetical questions to the [VE], and the limitations would have resulted in the elimination of

all competitive work for [Plaintiff]" (id. at 12 (bold font omitted); see also Docket Entry 16 at 2-3); and

(4) "[t]he entire record before the ALJ is completely void of any evidence to support a finding that [Plaintiff] is capable of lifting and carrying anything other than light objects, which is contrary to the ALJ's finding that [Plaintiff] has an RFC to perform a range of medium work that would require him to occasionally lift and carry objects weighing up to 50 pounds. As of June 25, 2010, [Plaintiff] was 55-years-old, which is considered 'advanced age.' Therefore, in the alternative, and in consideration of [Plaintiff's] age, work history, and an RFC to perform a range of light work that is supported by the evidentiary record, [Plaintiff] should be found to have been under a disability . . . from and after June 25, 2010 in accordance with . . . Medical-Vocational Rule 202.06" (Docket Entry 13 at 13 (bold font omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 15 at 5-18.)

### 1. Function-by-Function Assessment

In Plaintiff's first assignment of error, he contends that the ALJ failed to "perform the function-by-function assessment required by SSR 96-8p . . . in making his determination as to [Plaintiff's] [RFC]." (Docket Entry 13 at 3 (bold font omitted).) Plaintiff

urges that, "[p]rior to making [the] RFC determination, it was incumbent on the ALJ, based on . . . [SSR] 96-8p, to perform a function-by-function assessment of how [Plaintiff's] severe impairments, including his heel injury, limit or restrict his ability to stand, walk, lift, carry, and perform other work functions." (Id. at 4.) According to Plaintiff, "the ALJ never performed an assessment of how [Plaintiff's] heel injury limits or restricts [Plaintiff's] ability to stand . . . in an ordinary work setting on a regular and continuing basis." (Id.) Further, Plaintiff asserts that the ALJ failed to support his findings concerning Plaintiff's ability to lift with substantial evidence. (See id. at 5 (citing Tr. 31-33); see also Docket Entry 16 at 3-4.) With regard to Plaintiff's ability to walk, he contends that "the ALJ selected various portions of [Plaintiff's] medical records that arguably support[ed] his conclusions as to [Plaintiff's] RFC, and [the ALJ] ignored inconsistent portions of the same medical records without providing an explanation for how these inconsistencies were considered and resolved." (Docket Entry 13 at 6.)

Moreover, Plaintiff points out that the ALJ found in the RFC "that [Plaintiff's] restrictions precluded him from 'standing and walking or sitting 6 hours in a work day'" (id. at 7 (quoting Tr. 31 (emphasis added))), which Plaintiff posits "has only four interpretations": (1) "that [] Plaintiff is precluded from performing *any* of the functions of standing and walking or sitting

for six hours in an eight-hour workday[,] . . . which would clearly support a finding that [] Plaintiff is disabled because he would remain off-task for 75% of an eight-hour workday" (Docket Entry 16 at 1 (emphasis in original)); (2) "that [] Plaintiff is able to stand and walk or sit *combined* for only six hours in an eight-hour workday," which would result in Plaintiff "remain[ing] off-task for 25% of the eight-hour workday" (id. at 1-2 (emphasis in original)); (3) that [] Plaintiff is able to stand and walk for six hours of an eight-hour workday *or* sit for six hours of an eight-hour workday" (id. at 2 (emphasis in original)); or (4) that Plaintiff can stand and walk for six hours in an eight-hour workday *and* sit for six hours in an eight-hour workday (see id. (emphasis added)); see also Docket Entry 13 at 7).

Plaintiff challenges the third interpretation on the ground that, "if [] Plaintiff is limited to sitting at least two hours during the workday, then he could not meet the standing/walking requirements of . . . medium work." (Docket Entry 16 at 2.) Plaintiff refutes the fourth interpretation (the one espoused by Defendant, see Docket Entry 15 at 12-13), on the basis of the ALJ's alleged failure to "address [] Plaintiff's ability to sit for certain periods of time." (Docket Entry 16 at 2.) Thus, Plaintiff maintains that, even under "the most liberal interpretation of the ALJ's [RFC] finding[]" with regard to standing, walking, and sitting, Plaintiff "still would be unable to perform the functional

requirements of medium work on a regular and continuing basis."
(Docket Entry 13 at 7.)[6]

Although, as Plaintiff concedes, the United States Court of
Appeals for the Fourth Circuit "refuse[d] to adopt a per se rule
requiring remand when the AL[J] fails to conduct the required
function-by-function analysis[,] . . . '[r]emand may be appropriate
. . . where an ALJ fails to assess a claimant's capacity to perform
relevant functions, despite contradictory evidence in the record,
or where other inadequacies in the ALJ's analysis frustrate
meaningful review.'" (Id. at 8 (quoting Mascio v. Colvin, 780 F.3d
632, 636 (4th Cir. 2015)).) According to Plaintiff, the ALJ here
did not perform "the requisite analysis that would allow this Court
to conduct a meaningful review of [his] conclusions." (Id.)
Plaintiff's arguments miss the mark.

RFC measures the most a claimant can do despite any physical
and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R.
§§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's
exertional and non-exertional capacity only after considering all
of a claimant's impairments, as well as any related symptoms,
including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R.
§§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's
exertional abilities to an appropriate level of work (i.e.,

---

[6] Curiously, in an earlier portion of Plaintiff's brief, he argued that the ALJ
found Plaintiff capable of standing and walking "eight hours per day." (Docket
Entry 13 at 6 (emphasis added).)

sedentary, light, medium, heavy, or very heavy).  See 20 C.F.R. §§ 404.1567, 416.967.  Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level.  See 20 C.F.R. §§ 404.1569a(c), 416.9691(c).

An ALJ need not discuss every piece of evidence in making an RFC determination.  See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)).  However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).  As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . .  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit recently addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand.  Mascio, 780 F.3d at 636-37.  Specifically, the Fourth Circuit stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are

irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, contrary to Plaintiff's argument (see Docket Entry 13 at 3-8), the ALJ sufficiently addressed the exertional components of the RFC to permit meaningful review by the Court.[7]

With regard to Plaintiff's heel impairment and ability to stand, the ALJ noted that, despite a heel replacement in 2003, Plaintiff "returned to work in 2005" and "received no recommendations for more invasive care and managed symptoms with medication." (Tr. 32.) Following that finding, the ALJ observed that "few treatment notes [existed] between 2009 and 2012" and concluded that "[t]he lack of ongoing care for . . . his heel, suggested th[at] condition[] required no intervention and otherwise only limitedly impacted [Plaintiff]." (Tr. 32-33.) The ALJ also discussed the opinion evidence as it related to Plaintiff's heel impairment and ability to stand. (See Tr. 33-34.) In that regard, the ALJ remarked that consultative examiner Dr. James Nelson found only mild arthritic changes in Plaintiff's heel, found no issues

---

[7] Plaintiff makes no argument that the ALJ erred by failing to specifically address postural, visual, communicative, manipulative, or environmental limitations. (See Docket Entry 13 at 3-8; Docket Entry 16.)

with Plaintiff's "muscle strength and tone," and noted that Plaintiff rose from a seated position "without difficulties." (Tr. 33; <u>see also</u> Tr. 426-29.) The ALJ concluded that Dr. Nelson's examination "address[ed] mild presentation of symptoms consistent with no more than restricting [Plaintiff] to medium exertion." (Tr. 33.) Furthermore, the ALJ agreed with the state agency consultants' determination that Plaintiff remained capable of medium work with regard to Plaintiff's SSI application. (<u>See</u> Tr. 34; <u>see also</u> Tr. 93, 106.)[8] The ALJ's discussion of Plaintiff's heel impairment and ability to stand permits meaningful judicial review.

Plaintiff asserts that the ALJ failed to support his findings concerning Plaintiff's ability to lift with substantial evidence. (<u>See</u> Docket Entry 13 at 5 (citing Tr. 31-33); <u>see also</u> Docket Entry 16 at 3-4.) According to Plaintiff, the ALJ relied on "three evidentiary items relating to [Plaintiff's] lifting ability:" (1) a Third Party Function Report completed by Plaintiff's daughter reflecting that Plaintiff had difficulty lifting more than <u>20 pounds</u> (<u>see</u> Tr. 32 (referencing Tr. 275)); (2) Dr. Nelson's opinion that Plaintiff's impairments did not affect his ability to lift, carry, and handle <u>light</u> objects (<u>see</u> Tr. 33 (referencing Tr. 427)); and (3) an observation that Plaintiff "notably lifted and carried

---

[8] Concerning Plaintiff's DIB application, the state agency consultants found insufficient evidence of any medically determinable impairments prior to Plaintiff's date last insured of December 31, 2011. (<u>See</u> Tr. 84, 115, 116.)

light objects" (Tr. 33 (emphasis added)).  (Docket Entry 13 at 5.)[9]
Plaintiff maintains that "the evidence that was cited by the ALJ as
to [Plaintiff's] apparent ability to lift **light** . . . objects does
not logically support the ALJ's finding and conclusion that
[Plaintiff] can lift 50 pounds occasionally."  (Id. (emphasis in
original).)

Plaintiff's argument overlooks two key facts.  First, the ALJ
agreed with the state agency consultants' findings, with regard to
Plaintiff's SSI application, that Plaintiff remained capable of
performing medium work.  (See Tr. 34; see also Tr. 93, 106.)
Second, Dr. Nelson did not state that lifting light objects
constitutes the most Plaintiff could do; rather, Dr. Nelson merely
noted that Plaintiff's impairments did not affect his ability to
lift, carry, and handle light objects.  (See Tr. 427.)[10]  Given
these considerations, the ALJ adequately supported his
determination that Plaintiff can perform the lifting and carrying
required by medium work.

Respecting walking ability, Plaintiff faults the ALJ for
selecting portions of Plaintiff's medical records that support the

---

[9] Plaintiff also challenges Defendant's recitation of additional evidence purportedly supporting the ALJ's determination as to Plaintiff's ability to lift, including "Plaintiff's testimony that he was able to rake and mow the lawn . . . [and] that he 'does a lot of stuff' to help people, such as driving people to the store."  (Docket Entry 16 at 3 (citing Docket Entry 15 at 8, Tr. 48-49; quoting Tr. 50).)  Plaintiff contends that such evidence "has nothing at all to do with an individual's lifting ability."  (Id. at 3-4.)

[10] Dr. Nelson's report did not indicate how many pounds the referenced "light objects" weighed.  (Tr. 427.)

RFC while ignoring inconsistent portions of the same medical records. (See Docket Entry 13 at 6.) Plaintiff challenges the ALJ's observation that consultative examiner "'Dr. Nelson identified no specific limitations during his evaluation'" (id. (quoting Tr. 33)), because Dr. Nelson found Plaintiff experienced mild difficulty walking on his heels and toes, displayed reduced ability to tandem walk on the left, and could hop only on the right foot (id. (citing Tr. 428)).

Plaintiff conflates the concepts of "limitations" and findings on examination. The ALJ noted that Dr. Nelson made findings on examination consistent with mild arthritis, but pointed out that the evaluation "lacked quantitative restrictions." (Tr. 33.) Indeed, Dr. Nelson neither provided any specific limitations on Plaintiff's ability to sit, stand, walk, lift, carry, push, or pull, nor opined as to any non-exertional limitations, such as postural, manipulative, or environmental restrictions. (See Tr. 426-29.) In fact, Dr. Nelson stated only that Plaintiff "exhibit[ed] mild physical limit[a]tion[] due to left foot pain" and expressly concluded that Plaintiff did not require any environmental restrictions. (Tr. 429 (emphasis added).)

Plaintiff additionally challenges the ALJ's statement that a May 28, 2014, office visit with treating physician Dr. Harvey Wolf "indicated [that Plaintiff possessed] a capacity to walk a half-mile." (Docket Entry 13 at 6 (citing Tr. 33).) According to

Plaintiff, that treatment note actually reflects that Plaintiff experienced chest pain when he walked a half-mile, and also contained references to Plaintiff's painful left foot arthritis and "trouble getting around." (Id.) Plaintiff also points to an August 13, 2014, office visit with Dr. Wolf in which Plaintiff complained of shortness of breath and vein pain in his arms and hands when he walked to the mailbox as further support of Plaintiff's limited ability to walk. (Id. (citing Tr. 530).) Plaintiff contends that the above-cited medical records lack consistency "with the ALJ's RFC assessment that [Plaintiff] is able to perform medium work that would require him to stand and walk eight hours per day." (Id.)

Plaintiff's contentions fail for several reasons. First, the ALJ did not err in his interpretation of the May 28, 2014, treatment note, as that note reflects that Plaintiff could physically walk a half mile, albeit with subjective reports of chest pain. (Compare Tr. 33, with Tr. 527.) Second, the ALJ did not selectively discuss only medical records that supported his ultimate RFC, as he also noted Plaintiff's report of "a walking capacity of a quarter mile before shortness of breath." (Tr. 33 (emphasis added); see also Tr. 496.) In addition, the ALJ specifically addressed Plaintiff's subjective complaint of vein pain in his arms and hands, but remarked that such a complaint remained "new and undiagnosed" and noted uncertainty as to whether

18

the condition would "persist or if it was related to one of his other conditions." (Tr. 33; see also Tr. 530.) The ALJ further observed that follow up appointments did not contain any complaints of vein pain (see Tr. 33; see also Tr. 532, 543), and that an exercise stress test showed Plaintiff's left ventricular ejection fraction at 49% with no ischemia (see Tr. 33; see also Tr. 538).[11] The ALJ concluded that, "given his clinical picture and his lack of persistent ongoing findings related to his cardiac issues, restrictions to medium are noted in the [RFC]." (Tr. 33.) Thus, the Court can meaningfully review the ALJ's analysis of Plaintiff's ability to walk.

Plaintiff also maintains that, even under "the most liberal interpretation of the ALJ's [RFC] finding[]" with regard to standing, walking, and sitting, Plaintiff "still would be unable to perform the functional requirements of medium work on a regular and continuing basis." (Docket Entry 13 at 7; see also Docket Entry 16 at 1-2.) Although, if read out of context, the ALJ's RFC assessment grammatically suggests that he "precluded" Plaintiff from standing and walking or sitting six hours in a workday (Tr. 31), the ALJ's repeated references to "medium" work (see Tr. 31, 33, 34), and his crediting of the state agency consultants' opinions (see Tr. 34), which found that Plaintiff could "[s]tand

_____

[11] The ALJ did not find Plaintiff's subjective complaints fully credible (see Tr. 32), and Plaintiff does not challenge the ALJ's finding in that regard (see Docket Entry 13).

and/or walk (<u>with normal breaks</u>) for a <u>total</u> of[] [a]bout <u>6</u> hours
in an 8-hour workday" and "[s]it (<u>with normal breaks</u>) for a <u>total</u>
of[] [a]bout <u>6</u> hours in an 8-hour workday" (Tr. 93, 106 (emphasis
added)), make clear that the ALJ found that Plaintiff could stand
and/or walk for up to <u>six</u> hours <u>and</u> sit for up to <u>six</u> hours in an
eight-hour workday.

    In sum, Plaintiff's first claim on review fails to entitle him
to relief.

## 2. Conflict Between VE and <u>DOT</u>

    In Plaintiff's second issue on review, he alleges that "[t]he
ALJ relied on testimony of a [VE] that conflicts with the [<u>DOT</u>]
without first obtaining an explanation and resolving the apparent
conflict in his written decision, which failed to comply with the
requirements set forth in SSR 00-4p" (Docket Entry 13 at 9 (bold
font omitted)), and <u>Pearson v. Colvin</u>, 810 F.3d 204 (4th Cir. 2015)
(<u>id.</u> at 10-11).  In particular, Plaintiff argues that one of the
three jobs that the VE identified in response to the ALJ's
dispositive hypothetical question, Dry-Cleaner Helper, <u>DOT</u> No.
362.686-010, 1991 WL 673006 (4th ed. rev. 1991), requires <u>frequent</u>
stooping, whereas the ALJ restricted Plaintiff to <u>occasional</u>
stooping.   (<u>See</u> Docket Entry 13 at 9; <u>see also</u> Tr. 31.)
Additionally, Plaintiff contends that the "Working Conditions
Information" for another of the three jobs cited by the VE, Prizer
(also known as Packer), <u>DOT</u> No. 920.687-142, 1991 WL 687996,

provides that "'[w]orkers may . . . work at **great heights** . . . and . . . **generally work 8-hour shifts, though longer shifts are not uncommon.'"** (Docket Entry 13 at 11 (emphasis in original).) According to Plaintiff, "[g]iven the AlJ's finding that [Plaintiff] is restricted to standing and walking or sitting only six hours in a day with no exposure to unprotected heights, it would appear that a [DOT] Code encompassing jobs in which workers generally work eight-hours days, with longer shifts not being uncommon, with some working at great heights, would not properly exemplify jobs that exist in significant numbers in the national economy that [Plaintiff] has the ability to perform in a work setting on a regular and continuing basis." (Id.) Plaintiff's argument ultimately fails as a matter of law.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. . . . [A]s part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added); see also Fisher v. Barnhart, 181 F. App'x 359, 366 (4th Cir. 2006). However, "an

ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant an "obvious" one).

Here, the ALJ queried the VE whether an individual with Plaintiff's age, education, work experience, and RFC could perform any jobs existing in significant numbers in the national economy. (See Tr. 65-66.) In response, the VE opined that such an individual would remain capable of performing the medium-exertion jobs of dry cleaner helper, laundry attendant, and hand packer, and provided the corresponding DOT codes for those jobs, as well as the jobs's incidence in the national economy. (See Tr. 66.)[12] The ALJ then asked the VE: "Has your entire testimony been consistent with the [DOT]?" (Tr. 67.) In response, the VE stated: "The [DOT] doesn't address absenteeism or time off-task, but other than that, yes, your honor." (Id.) At this point, the ALJ asked Plaintiff's

---

[12] The ALJ asked two additional hypothetical questions of the VE, both assuming the same limitations as the first hypothetical, but adding that "the individual would consistently remain off-task more than 15 percent of the workday in addition to regularly scheduled breaks" (hypothetical number two), or that "the individual would consistently miss at least three days of work per month on an unexcused or unscheduled basis" (hypothetical number three). (Tr. 67.) The VE testified that each new restriction eliminated all competitive work. (Id.) However, the ALJ ultimately adopted neither the off-task nor the absence restriction in his RFC determination. (See Tr. 31.)

counsel if he had any questions for the VE, to which Plaintiff's counsel responded: "No, your honor, I do not." (Tr. 68.) Thereafter, the ALJ issued a decision finding Plaintiff not disabled (see Tr. 25-36), which adopted the VE's testimony as to available jobs:

> To determine the extent to which [the RFC's non-exertional limitations] erode the unskilled medium occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as . . . [:]
>
> [c]leaner custodian[,] . . . [t]icket taker laundry[,] [and] [h]and packer[.]"
>
> . . .
>
> Pursuant to SSR 00-4p, the [ALJ] has determined that the [VE's] testimony is consistent with the information contained in the [DOT].

(Tr. 35 (emphasis added).)

Here, the ALJ did not fully discharge his duty under SSR 00-4p. Although the ALJ inquired of the VE whether any conflicts existed between her testimony and the DOT, and the VE acknowledged that the DOT did not address absenteeism or time off-task, but that no other conflicts existed (see Tr. 67), the ALJ failed to independently identify "where the [VE's] testimony seem[ed] to, but d[id] not necessarily, conflict with the [DOT]," Pearson, 810 F.3d at 209. As Plaintiff argues, one of the three jobs that the VE identified in response to the ALJ's dispositive hypothetical

question, Dry-Cleaner Helper, <u>DOT</u> No. 362.686-010, 1991 WL 673006, requires <u>frequent</u> stooping, whereas the ALJ restricted Plaintiff to <u>occasional</u> stooping. (<u>See</u> Docket Entry 13 at 9; <u>see also</u> Tr. 31.) However, the ALJ's error in that regard remains harmless for two reasons. <u>See generally</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

First, although Plaintiff contends that the "Working Conditions Information" for another job identified by the VE, Packer, <u>DOT</u> No. 920.687-142, 1991 WL 687996, suggests that job <u>may</u> require Plaintiff to work at great heights and possibly for longer than eight-hour shifts, Plaintiff fails to provide a citation to such "Working Conditions Information." (<u>See</u> Docket Entry 13 at 11.) Moreover, the actual <u>DOT</u> listing for the specific packer job the VE cited (as opposed to a more general description of the working conditions of packaging and material handling jobs), provides that working in "[h]igh [e]xposed [p]laces . . . does not exist" for that job, and makes no mention of working longer than eight-hour shifts. <u>DOT</u> No. 920.687-142, 1991 WL 687996. Thus, Plaintiff has not shown that, for the packer job, the VE's testimony apparently conflicted with the <u>DOT</u>.

Second, even if the VE's testimony as to the packer job conflicted with the DOT, as Defendant argues (see Docket Entry 15 at 15), Plaintiff does not challenge the VE's testimony as to the ticket taker/laundry attendant position (see Docket Entry 13 at 9-12). The VE estimated that 71,000 such positions existed in the national economy and 1,800 such positions existed in North Carolina (see Tr. 66), numbers which certainly qualify as "significant," see, e.g., Weiler v. Apfel, 179 F.3d 1107, 1110-11 (8th Cir. 1999) ("The [VE's] testi[mony] that there are 32,000 surveillance monitor positions nationwide . . . is substantial evidence supporting the ALJ's conclusion that there are a significant number of jobs in the economy which [the plaintiff] can perform."); Lee v. Sullivan, 988 F.2d 789, 794 (7th Cir. 1993) (documenting cases establishing that state or local job totals as low as 174 supported "significant number" finding at step five); Craige v. Bowen, 835 F.3d 56, 58 (3d Cir. 1987) ("[The VE] indicated there were about 200 jobs in the light exertional category within [the plaintiff's] capabilities in his region. This is a clear indication that there exists in the national economy other substantial gainful work which [the plaintiff] can perform."); Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir. 1979) ("Claimant contends that the light and sedentary jobs described by the [VE] . . . do not exist in significant numbers within the region. We do not think that the approximately 110 jobs testified to by the [VE] constitute an insignificant

25

number."); <u>Patterson v. Astrue</u>, Civ. Action No. 8:07-1602-HFF-BHH, 2008 WL 294461, at *5 (D.S.C. July 31, 2008) (unpublished) ("[T]he VE testified that 28,000 surveillance jobs appeared in the national economy. This testimony was substantial evidence for the ALJ to conclude that the surveillance job appeared in significant numbers." (internal citation omitted)).

Accordingly, Plaintiff has not shown reversible error with respect to the ALJ's reliance on (and adoption of) the VE's testimony as to available jobs.

### 3. Hypothetical Questions

Next, Plaintiff contends that, "[a]lthough the ALJ found and concluded that [Plaintiff's] restrictions and limitations included 'standing and walking or sitting 6 hours in a workday,' the ALJ failed to include these restrictions and limitations in his hypothetical questions to the [VE]." (Docket Entry 13 at 12; <u>see also</u> Docket Entry 16 at 2-3.) More specifically, Plaintiff asserts that the ALJ's finding that Plaintiff can "stand and walk or sit for only six hours in an eight-hour workday . . . forc[es] him to remain off-task for at least 25% of the entire workday." (<u>Id.</u>) Plaintiff points out that, in one of the ALJ's hypothetical questions to the VE, the ALJ asked the VE if an individual "consistently remain[ing] off-task for more than 15 percent of the workday in addition to regularly scheduled breaks" would eliminate all competitive work, to which the VE responded: "Yes, your honor."

26

(Tr. 67.)   Thus, Plaintiff argues that "the [VE's] own testimony supports a finding that all competitive work that she identified would be eliminated in light of these additional restrictions that the ALJ failed to include in his hypothetical question." (Docket Entry 13 at 13.)   Plaintiff additionally faults the ALJ's dispositive hypothetical question for "fail[ing] to contain any mention at all of an assumption that the hypothetical individual would be restricted to sitting for a portion of the workday, nor did it mention how long or how often the hypothetical individual would be required to sit, nor did it mention whether the hypothetical individual would have to be able to sit at his or her own option."   (Docket Entry 16 at 2-3 (citing Tr. 65-66).) Plaintiff's contentions fall short.

As discussed in a preceding subsection, despite the ALJ's grammatical errors in formulating the RFC, his repeated references to "medium" work (see Tr. 31, 33, 34), and his crediting of the state agency consultants' opinions (see Tr. 34), which found that Plaintiff could "[s]tand and/or walk (with normal breaks) for a total of[] [a]bout 6 hours in an 8-hour workday" and "[s]it (with normal breaks) for a total of[] [a]bout 6 hours in an 8-hour workday" (Tr. 93, 106 (emphasis added)), make clear that the ALJ found that Plaintiff could stand and/or walk for up to six hours and sit for up to six hours in an eight-hour workday.   Thus, no basis exists for Plaintiff to assert that the ALJ somehow limited

27

Plaintiff to less than an eight-hour workday or found that he would remain off-task for 25 percent of the workday in addition to regularly scheduled breaks.

Moreover, to the extent Plaintiff faults the ALJ for failing to include in the dispositive hypothetical question specific details regarding how long and how often Plaintiff could sit and whether he would need a sit/stand option, Plaintiff's argument fails. By crediting the state agency consultants' opinions that Plaintiff could sit (with normal breaks) for up to six hours in an eight-hour work day (see Tr. 34), the ALJ signaled that he found Plaintiff capable of performing jobs that require him to sit for any length of time up to and including six hours. Furthermore, the ALJ's omission of a sit/stand option from the RFC and hypothetical question(s) does not constitute error, because no medical source of record opined that Plaintiff required a sit/stand option.[13]

### 4. RFC

Lastly, Plaintiff alleges that the ALJ erred in finding that Plaintiff maintains the "RFC to perform a range of medium work."

---

[13] In addition, at the hearing before the ALJ, Plaintiff failed to question the VE about whether the cited jobs would accommodate a sit/stand option, despite the fact that he had the opportunity (through his attorney) to cross-examine the VE, including by posing additional hypothetical questions encompassing a sit/stand option. (See Tr. 68.) As a result, Plaintiff has likely waived, in this Court, any challenge to the ALJ's omission of a sit/stand option. See Howard v. Astrue, 330 F. App'x 128, 130 (9th Cir. 2009) ("The only limitation that substantial evidence arguably supports and that the ALJ failed to include in his hypothetical questions is depression. However, as noted above, [the plaintiff] waived any claim he may have had on this issue. [The plaintiff's] attorney had two opportunities to pose his own hypothetical questions to the VE, and he never mentioned depression as a limitation.").

(Docket Entry 13 at 13 (bold font omitted).)  More particularly, Plaintiff reiterates his earlier argument in connection with his first issue on review, that the ALJ did not cite to substantial evidence to support his determination as to Plaintiff's lifting ability.  (Compare id. at 5, with id. at 13-14.)  According to Plaintiff, the ALJ should have limited Plaintiff to light work, which would have resulted in Medical-Vocational Rule 202.06 directing a conclusion of "disabled."  (Id. at 14.)  Plaintiff's allegation warrants no relief.  As discussed above, the ALJ supported his finding as to Plaintiff's ability to lift and carry objects at the medium level of exertion with substantial evidence and thus Medical-Vocational Rule 202.06 does not apply.

### III.  CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner of Social Security (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 9, 2017